**Orville B. WRAY, Plaintiff,**

v.

**Jeff DONACA and Ralph Burks, Defendants.**

**Civ. No. 92–6279–TC.**

United States District Court, D. Oregon.

May 21, 1993.

Claud A. Ingram, Jr., Eugene, OR, for plaintiff.

Jens Schmidt, Harrang Long Watkinson Arnold & Laird, PC, Eugene, OR, for defendants.

## ORDER

COFFIN, United States Magistrate Judge:

Defendants have moved for summary judgment. The undisputed facts of the case are as follows:

Defendants Jeff Donaca and Ralph Burks are police officers for the City of Eugene. On August 11, 1990, plaintiff Orville Wray and his wife went to the Safeway supermarket on West 11th in Eugene, Oregon. Plaintiff was driving their automobile, and sat behind the wheel in the Safeway parking lot as his wife went into the store and shopped. Plaintiff was armed with a loaded .38 revolver, which was positioned between his legs as he sat in the car. A woman approached plaintiff to complain about his driving on the way to the market, and observed the weapon. She retreated and contacted a security guard who worked at an adjacent store. The security guard walked by plaintiff's car and also observed the gun between plaintiff's legs. The guard entered the Safeway store, alerted the manager, and called the police.

Officers Donaca and Burks were dispatched to the Safeway parking lot to investigate the situation. Donaca located Mrs. Wray inside the store and questioned her about the firearm. She related that her husband was a paraplegic and had a permit for the firearm. Donaca informed Mrs. Wray that the police had been summoned because passers-by who observed the weapon feared that plaintiff was planning a robbery. Mrs. Wray denied that her husband planned to rob the store.

Donaca and Wray then went to the parking lot to speak with plaintiff. Donaca approached plaintiff from the driver's side while Burks provided cover from the rear. Donaca identified himself as a police officer (he was in uniform) and instructed plaintiff to place his hands where they would be visible. Donaca asked plaintiff if he had a weapon and plaintiff stated he did; the officer informed plaintiff that he would have to take the gun while he checked out the situation, but plaintiff objected; Donaca then observed the weapon between plaintiff's legs, and reached in and seized it. When Donaca

asked whether he had any more firearms in the car, plaintiff responded: "I told him that was for me to know and for him to wonder about."[1] At this response, Donaca stepped back and drew his service revolver, but did not point it at plaintiff. After further discussion, Donaca became satisfied that no additional firearms were present and re-holstered his revolver. The officer unloaded plaintiff's firearm, verified his identity and concealed weapons permit, and returned the firearm to plaintiff. The bullets were given back to plaintiff's wife, who by this time had emerged from the store. The officers then departed the area.

## LEGAL ANALYSIS

Plaintiff contends that the police action in this case violated his Fourth Amendment right against unreasonable searches and seizures. He reasons that because he had a permit for the revolver, and because his wife so informed them, the officers acted illegally in seizing the firearm from him and unloading it during their investigation of the circumstances. In essence, he contends that the police acted unreasonably, and that they either should have ceased their investigation once they talked to his wife in the store or, in the alternative, were required to allow him to keep his gun (fully loaded) in his possession as they made inquiry of him at the car. In response to a hypothetical posed at oral argument on the motion, plaintiff's counsel asserted the position that even should the police observe a man carrying a firearm as he approached an elementary school, so long as there were grounds to believe he had a permit for the gun they could take no action until he began using it unlawfully.

Plaintiff's position is simply untenable. The police do not have to sit back and wait until the bullets start flying to act in the interest of protecting the public. Any individual who visibly arms himself with a firearm for a trip to the grocery store cannot reasonably expect to be immune from police inquiry merely because he may have a permit for the weapon.

It is an undeniable fact of life that firearms take a heavy toll of innocent life in our society; that one's possession of a firearm in a public place may be lawful is certainly no guarantee against its deadly use. If plaintiff's theory were a correct statement of the law, it would no doubt shock parents of schoolchildren to be told that the Constitution prevents the police from disarming a gun-bearing stranger as he makes his way towards the playground.

The officers' conduct in this case was at all times reasonable and appropriate under the circumstances. It was reasonable, if not necessary, in the discharge of their duties as police officers to investigate the circumstances of a man carrying a firearm in the parking lot of a busy shopping center. In investigating the matter, these officers were not required to accept Mrs. Wray's statements at face value and allow plaintiff to remain armed in a public parking lot; nor were they required to place themselves at deadly risk by allowing plaintiff to remain in possession of his loaded revolver when they questioned him about the weapon. *See: Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

## CONCLUSION

In sum, Officers Donaca and Burks had probable cause to believe plaintiff was armed with a loaded firearm in a public place and thus presented a deadly risk to the safety of those in the area. They had probable cause to search for and seize the firearm under the circumstances. At the very least, they possessed the minimum level of reasonable suspicion necessary for such limited intrusion as occurred here when encountering an armed subject of a legitimate investigation. The undisputed facts mandate the entry of summary judgment on the merits in favor of defendants.

---

1. Excerpt from plaintiff's deposition.

Because of my ruling on this issue, I do not reach defendants' alternative grounds for summary judgment (statute of limitations and qualified immunity).

Defendants' motion for summary judgment (# 15) is hereby granted and this case is dismissed.